# Richmond

## Marshall National Bank & Trust Company v. Robert R. Corder.

January 13, 1938.

Present, All the Justices.

The opinion states the case.

*Thomas, Strauss & Backus* and *L. R. Bartenstein* for the plaintiff in error.

*John Locke Green* and *Clarence R. Ahalt,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

This suit was, in reality, between Robert R. Corder as plaintiff and the Marshall National Bank & Trust Company as defendant. The parties will hereinafter be referred to as Corder and the bank, respectively.

There was a verdict of the jury, sustained by the court, in favor of Corder for the sum of $2,000. The case is before us on a writ of error granted the bank.

P. W. Anderson was the cashier of the bank and he was also the president of the Frost Realty Corporation. Corder, a former resident of the Village of Marshall or its vicinity, was working in a dairy in Washington, D. C., and, with the money he had accumulated, he had purchased a lot in

Tuckahoe Village and had progressed with the building of a dwelling as far as the construction of its foundation. He needed money for its completion and he applied to Anderson, the cashier of the bank, for it. Mr. Anderson agreed to negotiate a loan of $1,000, to be secured on the lot and the house in course of construction by a deed of trust which contained an insurance clause. The amount of the loan was deposited to the credit of Corder in the bank. It was to be drawn out as the construction of the house proceeded and its expense necessitated. It does not appear from the record why the issuance of the insurance policy was deferred until sometime in the year 1935, some seventeen months after the loan was made.

The amount of the loan was not sufficient to complete the construction of the building and on two subsequent occasions Corder applied to Mr. Anderson for additional loans, one for $500 and another for $200. These loans, secured by two notes executed by Corder and endorsed by his father, were granted by the bank.

It becomes informative at this point to quote from the testimony of Corder relative to the insurance.

"Q. What did he (Anderson) tell you then?

"A. I paid the interest on the one thousand dollars, and he told me, he said, 'I have taken out insurance on this property for you now.' I said, 'You have?' He said, 'Yes.' He said, 'Do you want to pay it now?' I said, 'Yes, how much is it?' He said, '$4.50.' 'How much is that now?' I said. He said, 'It is enough to cover the loans and a little more besides.' "

On cross-examination Corder was questioned, in part, as follows:

"Q. Mr. Corder, you testified that Mr. Anderson mentioned insurance to you at the time the loan was placed. Was there any amount mentioned at that time?

"A. No, sir.

"Q. Wasn't any amount mentioned at any other time?

"A. There wasn't no amount, only after he just said enough to cover the loans and expenses besides.

"Q. And the original loan was one thousand dollars?

"A. Seventeen hundred dollars, what I was figuring on. I had gotten it all."

In January, 1936, Corder's house was burned. He was notified of this fact by his sister, both of whom went to the scene of the fire. On their way back to Washington, they stopped in the village of Cherrydale for lunch. There Corder had his sister call Mr. Anderson over the telephone to notify him of the fire. Then, for the first time, Corder became aware that he had only one thousand dollars of insurance on a house which he testified had cost him some four thousand dollars. Corder's suit is based upon his contention that the bank is liable for damages resulting from the failure of Anderson, the agent of the bank, to effect the amount of insurance which he had been assured had been done.

It appears that Corder is a densely ignorant man. He had been in a country public school for some years but could only sign his name. He was unable to read or write.

The bank defended the suit by contending that it had no contract or agreement with Corder respecting the original loan or the insurance; that Anderson was not its agent in either of the transactions; and that it did not profit by them.

It has been suggested that a national bank has no authority to act as an agent or broker for an insurance company, nor to authorize any official or employee to do so, because such act would be *ultra vires* and void. This question cannot arise here because national banking associations organized under the laws of the United States and doing business in a place the population of which does not exceed five thousand inhabitants are expressly granted such power. See Title 12 U. S. C. sec. 92, 12 U. S. C. A. sec. 92 (Federal Reserve Act, sec. 13).

The two vexing questions which the case presents are, first, whether there was a contract between the bank, through its agent, and Corder providing for the insurance of the house in accordance with Corder's contention, and,

second, was Anderson in fact the agent of the bank in the particular transaction.

Corder testified that there was such an agreement or contract. He declared in more than one instance that Anderson assured him that the insurance to the extent of the loans had been effected. He testified further that he thought that he was borrowing the money from the bank; that he knew nothing of the Frost Realty Corporation; that Anderson did not inform him as to the amount of the insurance except that it was sufficient to cover all the loans and a little more besides; that Anderson did not inform him that he was borrowing money from any other source than the bank; that he was ignorant of the true status of the matter until the fire occurred and it became necessary to investigate it.

Corder had the utmost confidence in Anderson. He seems to have left the whole transaction to him. He testified that he told Mr. Anderson that he was uneducated and knew nothing about such things and he wanted him to "tend to it" for him.

We do not intend to intimate that Mr. Anderson intentionally deceived Corder. He did not. The contract, however, as Corder related it, was not kept and performed.

Anderson denied the statements made by Corder and in some particulars gave a different version of the transaction. The jury and the judge of the trial court saw the witnesses, heard their testimony and observed them, and they have resolved these two questions of fact in favor of Corder and we cannot say that there is no evidence upon which they could base their conclusions and that the conclusions to be drawn from the facts were such about which reasonable men could not differ.

This court has so repeatedly said that in a case like this it is bound by the verdict of the jury, particularly when it is sustained by the judgment of the court, as to render it unnecessary to quote authority upon the proposition. It is definitely settled law.

Accordingly, we affirm the judgment of the trial court.

*Affirmed.*